IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |
|---|---|
| WG/WELCH MECHANICAL CONTRACTORS, LLC | : |
| v. | : Civil Action No. DKC 22-2296 |
| INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL & TRANSPORTATION WORKERS, LOCAL UNION 100 – SHEET METAL DIVISION, et al. | : |

**MEMORANDUM OPINION**

Plaintiff WG/Welch Mechanical Contractors, LLC, filed this three-count state tort action asserting subject matter jurisdiction based on diversity of citizenship. (ECF No. 1, at 3). The complaint alleges that the International Association of sheet Metal, Air, Rail & Transportation Workers, Local Union 100 ("SMART Local 100") and three of its officers/agents intentionally interfered with Plaintiff's business relationships, engaged in a civil conspiracy, and defamed Plaintiff. Defendants moved to dismiss all three claims pursuant to Fed.R.Civ.P. 12(b)(6), primarily arguing preemption under *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244 (1959). It also argues, alternatively, that the claims are completely preempted under Section 303 of the Labor Management Relations Act.[1]  Plaintiff

_____

[1] *Garmon* preemption, asserted as a defense, may more properly be described as a lack of jurisdiction under Rule 12(b)(1). *See, e.g., Lontz v. Tharp*, 413 F.3d 435, 442 (4th Cir. 2005)("*Garmon* may

countered that preemption, in any form, is not applicable, citing *Linn v. Plant Guard Workers*, 383 U.S. 53 (1966).  After the motion was briefed, the court, *sua sponte*, raised the question of subject matter jurisdiction because the complaint allegations did not address fully the citizenship of Defendants.

Plaintiff is an LLC whose only two members are citizens of Pennsylvania.  (ECF No. 1, at 2).  Defendants are SMART Local 100 and three individual union employees.  (ECF No. 1, at 2-3).

For diversity jurisdiction to exist, the parties must be citizens of different states and there must be more than $75,000 in controversy.  28 U.S.C. § 1332(a).  The parties must be completely diverse—that is, no plaintiff may be a citizen of the same state as any defendant.  *Wisc. Dep't of Corrs. v. Schacht*, 524 U.S. 381, 388 (1998).  As an "unincorporated labor union," SMART Local 100's citizenship for diversity purposes is determined

---

strip state courts of adjudicatory authority, but in the very same breath it also deprives federal courts of that authority. Indeed, the same 'exclusive competence' of the NLRB which divests state courts of original jurisdiction over claims subject to sections 7 and 8 also divests federal courts of such jurisdiction."); *see also Ernest DiSabatino & Sons, Inc. v. Metro. Reg'l Council of Carpenters*, No. 09-406-JJF, 2010 WL 2898319, *2 n.4 (D.Del. July 20, 2010); *Frohnapfel v. ArcelorMittal Weirton LLC*, 100 F.Supp.3d 556, 560 n.4 (N.D.W.Va. 2015); *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 607-09 (6th Cir. 2004); *Smith v. Houston Oilers*, Inc. 87 F.3d 717, 721 (5th Cir. 1996) ("Though the [Defendants-Appellees] are asserting NLRA preemption for the first time on appeal, we may consider the argument since NLRA preemption is an issue of subject matter jurisdiction.").

by the citizenship of "each of its members." *Steelworkers v. R.H.
Bouligny, Inc.*, 382 U.S. 145, 146-47 (1965).[2]

The Complaint, however, did not allege the citizenship of
SMART Local 100's members or of the three individual Defendants.
Thus, the court directed the parties to provide the needed
citizenship information. (ECF No. 22). The court also invited
the parties to brief any alternative bases for federal
jurisdiction.

In response, Defendants provided an affidavit from SMART
Local 100's Office Manager which stated that—according to the
union's records—Pennsylvania is the "primary place of residence"
for twenty-one active SMART Local 100 members, and that the three
individual defendants reside in Maryland. (ECF No. 23-1, at 1-
3). While residence does not always reflect citizenship, *see Axel
Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 145 F.3d 660, 663
(4th Cir. 1998), it may be an aspect of domicile for purposes of
determining citizenship. Defendant alternatively argued that the
court has federal question subject matter jurisdiction because
Section 303 of the Labor Management Relations Act ("LMRA"), 29
U.S.C. § 1987, "completely preempts [Plaintiff's] state-law claims
and transforms them into claims arising under federal law." (ECF

---

[2] Plaintiff seemed to recognize this reality, see ECF No. 1,
¶ 6. But then it failed to allege any facts on which to make the
citizenship determination.

No. 23, at 2).   The court instructed Plaintiff to respond to Defendant's arguments, explain whether it contests that any of the union's members are Pennsylvania citizens, and state whether it believes that that its claims are completely preempted by Section 303 for federal jurisdiction purposes.   (ECF No. 25, at 4). Plaintiff has filed a response in which it makes arguments related to both diversity and federal question jurisdiction.   (ECF No. 26).

Although the jurisdictional issue was raised by the court *sua sponte*, analysis proceeds as if a motion pursuant to Rule 12(b)(1) had been lodged.

> A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). In a facial challenge, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis [v. Thompson]*, 367 F.Supp.2d [792, 799 (D.Md. 2005)]. Where the challenge is factual, however, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. The court, therefore, "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also*

     *Cunningham v. Gen. Dynamics Info. Tech., Inc.*,
     888 F.3d 640, 650 (4th Cir. 2018).

*Akers v. Maryland State Educ. Ass'n*, 376 F.Supp.3d 563, 569 (D.Md. 2019), *aff'd*, 990 F.3d 375 (4th Cir. 2021).

   Regarding diversity jurisdiction, Plaintiff argues that the "scant amount of Pennsylvania citizens comprising the totality of Local 100's membership is too insignificant to defeat diversity jurisdiction." (ECF No. 26, at 2). Plaintiff also argues that it "is simply without sufficient evidence that the alleged individual Pennsylvania members are in fact citizens of Pennsylvania." (ECF No. 26, at 2). It thus asks the court to "issue an additional order directing production of each active member by name and address." (ECF No. 26, at 2).

   Plaintiff is wrong to argue that diversity jurisdiction may exist when an "insignificant" number of the union's members are non-diverse. Complete, not some lesser, diversity is required under the applicable statute:

     "Article III requires only minimal diversity,
     that is, diversity of citizenship between any
     two parties on opposite sides of an action,
     regardless of whether other parties may be co-
     citizens." *Saadeh v. Farouki*, 107 F.3d 52, 54
     (D.C. Cir. 1997). To satisfy statutory
     diversity pursuant to 28 U.S.C. § 1332,
     however, a complaint must on its face allege
     complete diversity, "i.e., [ ] there is no
     plaintiff and no defendant who are citizens of
     the same State." *Wisconsin Dep't of Corr. v.
     Schacht*, 524 U.S. 381, 388 (1998).
     "Constitutional power is merely the first
     hurdle that must be overcome in determining

Case 8:22-cv-02296-DKC   Document 27   Filed 07/28/23   Page 6 of 10

that a federal court has jurisdiction over a particular controversy. For the jurisdiction of the federal courts is limited not only by the provisions of Art. III of the Constitution, but also by Acts of Congress." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 372 (1978). Thus, in order to exercise diversity jurisdiction, the parties must not only be minimally diverse in satisfaction of Article III, but also completely diverse in satisfaction of 28 U.S.C. § 1332.

*Sandoval v. Doe No. 1*, 591 F. Supp. 3d 7, 10 (E.D.N.C. 2022).

The Supreme Court has held that the citizenship of an "unincorporated labor union" for diversity purposes is determined by the citizenship of "*each* of its members." *R.H. Bouligny, Inc.*, 382 U.S. at 146-47 (emphasis added). Thus, diversity does not exist when even a single member of a defendant labor union is non-diverse.[3]

Plaintiff's request for further fact-finding regarding the citizenship of Defendant's members is similarly misplaced. "The

---

[3] *See also* 13F Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3630.1 (3ᵈ ed. 2023) (noting that the citizenship of a "labor union" is determined by "the actual citizenship of *each* of [its] members") (emphasis added); *United Food & Com. Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meridian Square, Inc.*, 30 F.3d 298, 302 (2ᵈ Cir. 1994) ("[T]he citizenship of an unincorporated association, such as a labor organization, is determined by the citizenship of *each* of its members."); *Unified Sys. Division BMWED-IBT v. Biden*, No. 2:21-cv-00700-JNP-JCB, 2022 WL 2191660, *4 (D.Utah June 17, 2022) (rejecting the argument that a union's membership for diversity purposes should be determined by the citizenship of the members who were most interested in the litigation because "the court must look to the citizenship of *each* of the [union's] members" to decide diversity jurisdiction) (emphasis added).

6

burden of persuasion for establishing diversity jurisdiction . . . remains on the party asserting it." *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010). When it is contended that a complaint is "jurisdictionally deficient on its face," the court assumes the truth of all facts alleged in the complaint and determines whether jurisdiction exists under those alleged facts. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). If the complaint "does not contain the necessary factual allegations" to establish subject matter jurisdiction, then the plaintiff is not entitled to additional "jurisdictional discovery" in order to obtain the information it lacks. *SunTrust Bank v. Village of Fair Oaks Owner, LLC*, 766 F.Supp.2d 686, 689-90 (E.D.Va. 2011). For instance, if a plaintiff sues an unincorporated entity in federal court on the basis of diversity jurisdiction and the complaint does not allege "the identity and citizenship of the [defendant's] membership," then the plaintiff is not entitled to an "evidentiary hearing to elicit from the [defendant] whether or not it, in fact, has any [non-diverse] member[s]." *Id.*

While the court recognizes the difficulty a litigant may face in determining the citizenship of an entity such as SMART Local 100, the law places the burden on Plaintiff to obtain "knowledge of the requisite facts to plead diversity of citizenship adequately" *before* it files its complaint in federal court. *Id.* at 690. Here, Plaintiff did not allege the citizenship of SMART

7

Local 100's members in its complaint, and it concedes in its response that it "is simply without sufficient evidence" about the union's citizenship. (ECF No. 26-2, at 2). It is thus not entitled to obtain that knowledge through additional federal-court-mandated fact-finding.

Regarding federal question jurisdiction, Plaintiff asserts that its "state law claims do raise a federal question of potential preemption." (ECF No. 26, at 3). Plaintiff then argues, however, that its state law claims are *not* preempted by federal law and thus should be allowed to proceed in federal court.

This argument seems to misunderstand the preemption issue as it relates to federal question jurisdiction. The presence of an issue or defense of potential preemption does not present a federal question for purposes of federal question jurisdiction. Instead, under the "complete pre-emption doctrine," a federal court may have federal question jurisdiction over a complaint that purports to raise only state law claims if those claims involve "an area of state law [that] has been completely pre-empted" by a federal cause of action. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). Defendants cite several cases in which federal courts held that the federal cause of action available under Section 303 of the LMRA completely preempts state law claims related to certain secondary boycott activities. *See, e.g.*, *Smart v. IBEW Local 702*, 562 F.3d 798, 806-809 (7th Cir. 2009); *Silverman v. Verrelli*, No.

11–6576, 2012 WL 395665, at *7 (D.N.J. Feb. 7, 2012). In those cases, the federal court was able to retain federal question jurisdiction only because it dismissed the plaintiff's state law claims and allowed the plaintiff to file an amended complaint raising federal claims under Section 303.[4] Other areas of "ordinary" preemption, such as *Garmon*, are defensive only and do not serve to confer federal question subject matter jurisdiction. *Alston v. Baltimore Gas & Electric Co.*, No. ELH 22-1061, 2023 WL 1472020, *7-8 (D.Md. Feb. 1, 2023).

Plaintiff is thus mistaken to assert simultaneously that the assertion of a complete preemption doctrine defense establishes federal question jurisdiction *and* that its state law claims may proceed. Either the state law claims *are* completely preempted (in which case they must be dismissed and replaced with Section 303 claims), or they are *not* completely preempted (in which case federal question jurisdiction does not exist at all). Either way, this case cannot proceed in federal court if Plaintiff intends to press state law claims instead of Section 303 claims. Based on

---

[4] *See Smart*, 562 F.3d at 809 (holding that the plaintiff's state law claims were completely preempted under federal law, dismissing those claims, and allowing the plaintiff to file an amended complaint in which it had the chance "properly [to] state[] a claim" under Section 303); *Silverman*, 2012 WL 395665, at *7 (dismissing state law defamation claim which "concern[ed] the Union's secondary boycott activities" and allowing the plaintiff "to amend his Complaint . . . to assert a claim for relief under LMRA § 303").

its response, Plaintiff appears unwilling to convert its state law claims into Section 303 claims, assuming that complete preemption applies.[5]   Thus, the court cannot exercise federal question jurisdiction.

Because Plaintiff has failed to meet its burden to establish subject matter jurisdiction on either diversity or federal question grounds, the complaint will be dismissed.  Plaintiff does, however, request an opportunity to amend the complaint, and notes that it may "withdraw[] claims against Local 100 as an entity." (ECF No. 26, at 4).  If SMART Local 100 were removed as a defendant, diversity jurisdiction may exist.  Thus, Plaintiff will be granted leave to file an amended complaint within 21 days which sufficiently alleges the basis for federal jurisdiction.  Either the final dismissal of this action for lack of jurisdiction or the filing of an amended complaint would moot the pending motion to dismiss which will, accordingly, be denied without prejudice.  A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge

---

[5] In the current procedural posture, because Plaintiff does not wish to pursue a Section 303 claim in any event, the court is not resolving the question of whether complete preemption (or any other type of preemption) applies to the current claims.